**Rolando R. Silva IGLECIA, Plaintiff,**

v.

**Manuel Reyes SERRANO, et al., Defendants.**

**Civ. No. 95–1471 (HL).**

United States District Court, D. Puerto Rico.

April 18, 1995.

Alvaro R. Calderon, Jr., Hato Rey, PR, for plaintiff.

## OPINION AND ORDER

LAFFITTE, District Judge.

Before the Court is a petition by plaintiff Rolando R. Silva Iglecia for a temporary restraining order ("TRO").

## BACKGROUND

Plaintiff is a member of the Senate of the Commonwealth of Puerto Rico. Defendants are members of the Panel for the Special Independent Prosecutor ("SIP"). On October 15, 1992, the Secretary of Justice of the Commonwealth of Puerto Rico recommended to the SIP panel that a special independent prosecutor be appointed to investigate whether plaintiff Silva had his Senate employees perform non-legislative work during the years 1986–1991. On October 30, 1992, under P.R.Laws Ann. tit. 3, § 99k, plaintiff requested that the SIP panel not follow the recommendation made by the Secretary to appoint a special prosecutor. Plaintiff also

requested access to the information under the custody of the SIP panel regarding the allegations. This request was denied by the SIP panel.

On February 12, 1993, the SIP panel decided that a special independent prosecutor be appointed to investigate plaintiff's case, and appointed Frederico Torres Jiménez. Plaintiff then filed a motion for reconsideration on February 18, 1993, alleging that his constitutional right to due process had been violated and again requesting access to the information held by the SIP panel. On March 4, 1993, the panel refused plaintiff's request. Four days later, plaintiff filed another motion for reconsideration arguing that he had not been given an opportunity to rebut the allegations made against him or to present his own evidence. Again, the panel denied plaintiff's request.

On April 2, 1993, plaintiff filed an action in Superior Court of the Commonwealth of Puerto Rico to review the SIP panel's decision to appoint an SIP. On October 6, 1993, the Superior Court decided in favor of plaintiff, ordering the panel to grant plaintiff access to the information thereby providing for a meaningful review of the panel's decision. The Superior Court also ordered that the SIP panel hold a hearing. Defendants appealed the court's decision to the Supreme Court of Puerto Rico, which on January 24, 1995, reversed the lower court's decision. *Silva Iglecia v. Panel on the Special Indep. Prosecutor,* 95 J.T.S. 8 (1995).

Plaintiff requests this Court to enjoin defendants from pursuing the case against plaintiff any further pending the release of all information considered by the SIP panel in its determination to appoint a special independent prosecutor. Also, plaintiff requests this Court to order the SIP panel to provide a hearing to plaintiff to challenge the panel's decision to appoint an SIP. Plaintiff further requests a declaratory judgment by this Court that the failure to provide plaintiff with the information considered by the SIP panel in its decision to appoint an SIP violates the due process clause and the equal protection clause of the Fifth and/or the Fourteenth Amendment to the United States Constitution. Finally, plaintiff claims damages. Plaintiff alleges that the special independent prosecutor will be filing criminal charges against plaintiff at any moment. And plaintiff contends that the filing of said charges will harm his personal and political reputation.

## DISCUSSION

■ Federal courts may not enjoin state court proceedings except under extraordinary circumstances. *Younger v. Harris,* 401 U.S. 37, 41, 91 S.Ct. 746, 749, 27 L.Ed.2d 669 (1971). State court proceedings, under *Younger,* include state criminal investigations as well as prosecutions. *Rockwell Int'l Corp. v. United States,* 723 F.Supp. 176, 177 (D.D.C.1989) (citing *Younger v. Harris, supra; Bokulich v. Jury Comm'n of Greene County,* 394 U.S. 97, 98, 89 S.Ct. 767, 768, 22 L.Ed.2d 109 (1969); *Spielman Motor Sales Co. v. Dodge,* 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322 (1935)). "*Younger v. Harris* contemplates the outright dismissal of the federal suit, and the presentation of all claims, both state and federal, to the state courts." *Gibson v. Berryhill,* 411 U.S. 564, 577, 93 S.Ct. 1689, 1697, 36 L.Ed.2d 488 (1973).

The underlying reason for *Younger* abstention is "the notion of 'comity,' that is, a proper respect for state functions...." *Younger,* 401 U.S. at 44, 91 S.Ct. at 750. Specifically, Justice Black noted that this doctrine of "Our Federalism" represents

> a system in which there is a sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

*Id.* at 44, 91 S.Ct. at 750–51.

■ Under *Younger,* a plaintiff seeking to enjoin a state court criminal prosecution must demonstrate not only that he is faced with an irreparable injury, but that this irreparable injury is "both great and immediate." *Id.* at 46, 91 S.Ct. at 751 (citing *Fenner v. Boykin,* 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927 (1926)). "[T]he threat to the plain-

tiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution." *Younger,* 401 U.S. at 46, 91 S.Ct. at 751 (citations omitted). Federal intervention would be acceptable, however, if plaintiff could prove that the pending state court criminal proceeding involved flagrant and patent constitutional violations or if plaintiff showed the existence of "bad-faith, harassment, or any other unusual circumstance that would call for equitable relief." *Id.* at 54, 91 S.Ct. at 755.

The *Younger* doctrine has been extended to state civil proceedings. *Casa Marie, Inc. v. Superior Court of Puerto Rico,* 988 F.2d 252, 262 (1st Cir.1993) ("Except in the most extraordinary cases, a federal court must presume that state courts, consistent with the imperatives of the Supremacy Clause, ... are fully competent to adjudicate federal constitutional and statutory claims properly presented by the parties." (footnote and citations omitted)); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 607, 95 S.Ct. 1200, 1209–1210, 43 L.Ed.2d 482 (1975); *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); *Moore v. Sims,* 442 U.S. 415, 423, 99 S.Ct. 2371, 2377, 60 L.Ed.2d 994 (1979). The *Younger* doctrine has also been extended to state administrative and disciplinary decisions. *See Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 627–28, 106 S.Ct. 2718, 2723, 91 L.Ed.2d 512 (1986); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982).

*Younger* deference is required when the state civil or administrative proceeding (1) is judicial in nature, (2) involves important state interests, and (3) provides an adequate opportunity to raise the federal constitutional issues. *Bettencourt v. Board of Registration in Medicine,* 904 F.2d 772, 777 (1st Cir.1990). And finally, the *Younger* doctrine has been applied to declaratory judgments as well.

*Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971).

In the case at hand, plaintiff is the subject of a quasi-criminal investigation that began with a recommendation by the Secretary of Justice for the Commonwealth of Puerto Rico, then went to the SIP panel who recommended the appointment of a SIP. The pending criminal investigation, under Puerto Rico's statutory scheme, is aimed at the vital public interest of restoring the public trust and integrity in its public officers by addressing the problem of corruption.[1] P.R.Laws Ann. tit. 3, § 99h. And although plaintiff has alleged that the Court's failure to enjoin the SIP panel's appointment of the SIP will harm his personal and professional reputation, the Court finds that this allegation does not equal an irreparable harm that is both great and immediate. Moreover, plaintiff does not allege that the investigation is fueled by bad faith or harassing motivations. Nor does the statute evidence flagrant and patent constitutional violations. Absent a showing by plaintiff of said exceptions, under the *Younger* doctrine and its concerns for comity and federalism, this Court may not enjoin the Puerto Rico criminal investigation and potential prosecution of plaintiff.

And even if this investigation were classified as a civil or administrative proceeding, the *Younger* doctrine would still apply and mandate this Court's abstention. The beginning investigation and potential prosecution will be judicial in nature. As discussed above, the investigation implicates important state interests. And finally, plaintiff shall have an opportunity to raise his federal constitutional concerns should prosecution ensue. Accordingly, under *Younger,* the Court shall dismiss plaintiff's claims for injunctive and declaratory relief. *Gibson,* 411 U.S. at 577, 93 S.Ct. at 1697.

Plaintiff's remaining claim is one for damages in the amount of $1.5 million. Plaintiff is suing defendants in their official and individual capacities.[2] Under Puerto Rico law,

---

1. The Court intimates no opinion as to the allegations levied against Senator Silva in this case.

2. Although the complaint is not clear, the Court shall read the complaint as stating a claim for damages against defendants in both their official and individual capacities.

**30**

the Governor appoints the SIP panel members with the consent of the House and the Senate. P.R.Laws Ann. tit. 3, § 99q(1). The panel members must be former Superior Court judges or Supreme Court justices. *Id.* The SIP panel's duties involve (1) determining whether a full investigation is merited and (2) determining the limits of the commission and jurisdiction of the Special Prosecutor, should one be appointed. P.R.Laws Ann. tit. 3, § 99r. Under the Eleventh Amendment, state officials in their official capacity are immune from suit in federal court for money damages. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). Because defendants, members of the SIP panel, are acting in their official capacity, the Eleventh Amendment bars plaintiff's claim for damages against the SIP panel members in their official capacities. *Bettencourt,* 904 F.2d at 781.

■ The doctrine of "quasi-judicial" immunity bars a plaintiff's damages action against defendants in their individual capacities if said defendants perform functions that are similar to those of judges or prosecutors. *Id.* at 781–785. To determine whether "quasi-judicial" immunity should be applied, the Court must apply a three-part test: First, do the panel members perform traditional judicial functions such as applying facts in order to resolve disputes? Second, do the panel members decide controversial cases that without immunity would subject the members to numerous damages claims? And third, do the panel members adjudicate the disputes in a forum that provides safeguards to protect constitutional rights? *Id.* at 783.

Based on the functions of the SIP panel members, the Court finds that the action at issue of the SIP panel members involves "quasi-judicial" functions: they determine whether there is enough information to justify the appointment of a special prosecutor and begin an investigation. The SIP panel's role, which is to determine whether investi-

gations should be commenced against public officers, is sufficiently controversial that without absolute immunity the panel members would be subjected to numerous damages claims. And there are safeguards in place to protect the targeted official's constitutional rights. Plaintiff is granted an opportunity to request reconsideration of the Secretary of Justice's recommendation to the panel concerning the appointment of a Special Prosecutor. P.R.Laws Ann. tit. 3, § 99k(5).[3] Additionally, once the special prosecutor is appointed, an investigation is commenced that may result in a prosecution of the targeted public officer. During this process, the targeted officer is permitted the constitutional protection extended to all defendants who are prosecuted for the commission of a crime. *See* P.R.R.Crim.P. 95. Therefore, the Court finds that absolute immunity bars plaintiff's claims for damages against the SIP panel members acting in their individual capacity in the performance of their "quasi-judicial" functions.

**WHEREFORE,** under the *Younger* doctrine, the Court hereby denies and dismisses plaintiff's claims for a TRO and declaratory relief. The Court also dismisses plaintiff's claims for damages as defendants are protected by absolute immunity. Judgment shall be entered accordingly.

IT IS SO ORDERED.

---

**3.** Additionally, as noted by the Puerto Rico Supreme Court, no cases "[recognize] a constitutional right to a person under a pending criminal investigation, and that has not been accused, to have access to the investigative file." *Silva Iglecia v. Superior Court of Puerto Rico,* 95 J.T.S. 8 (1995) (citing *Soto v. Secretary of Justice,* 112 D.P.R. 477 (1982); *Santiago v. Bobb,* 117 D.P.R. 153 (1986); *Lopez Vives v. Police,* 118 D.P.R. 219 (1987); *Rivera Gonzalez v. Danny's Bakery,* 121 D.P.R. 304 (1988)).